We turn to the last case on our calendar, Doris Powledge Phillips v. General Motors and Wilmington Trust Company. Go ahead, Mr. Davis. Please accord, Your Honors. Good morning. My name is Joshua Davis, and I represent Doris Powledge Phillips along with the five estates, Adam Powledge, and their children. There's a single issue before the court, whether or not Ms. Phillips has standing to assert new claims against General Motors, both old and new, with respect to the conduct that is alleged to have occurred prior to entering into the settlement agreement in 2010. The underlying court's decisions with respect to the assignment solely concern the liquidated claim that was the consideration for reaching the settlement agreement. That is, and as the court may be aware, General Motors bankruptcy left it without cash assets to resolve Ms. Phillips' underlying lawsuit, the product defect claim, and the resulting wrongful death lawsuit. That consideration, the liquidated, uncontested, non-objected to claim of approximately $2.7 million, had to be exchanged with Dover Fund, an investor that bought and sold claims as part of the GM bankruptcy. In order for Ms. Phillips to obtain cash as a result of this settlement for a product defect case, she had to assign that liquidated claim, that amount, to Dover Fund. Dover Fund received exactly what it intended to contract for with the assignment. That is, an allowed liquidated claim. Ms. Phillips received the cash consideration that Dover Fund ascribed to that claim at that time. When the court reads the assignment that transferred the claim to Dover Fund, the assignment language clearly evinces those two parties' intent to ensure that Dover Fund gets the benefit of its risk. That is, it is negotiating with Ms. Phillips for this liquidated and allowed claim, is going to pay less than 50 cents on the dollar, in hopes of writing out the bankruptcy and getting more money in the end. But the assignment language cited by General Motors goes to the purpose of Dover Fund's purchase, which is, we want the benefit of writing out the bankruptcy. So if we end up exchanging the claim for more than what you are receiving, Ms. Phillips, you cannot come back to us and assert that you have a right to additional proceeds from that claim. But Ms. Phillips' lawsuit concerning fraud is about the fraud leading up to and inducing the settlement agreement. And we have always attempted to- How is that now related to the underlying transaction, the underlying claim? Thank you, Your Honor. That's the language you're using. And I appreciate that. In the state of New York, it's understood that a fraud claim concerning conduct that induces a settlement agreement is an independent claim. And a party's asserting that claim does not somehow-is not impacted by the settlement agreement. That's what Slotkin says. That 1979 decision of this body says that that plaintiff reached a settlement agreement, was not required to rescind the settlement agreement, and that the fraud claim existed independent of the settlement agreement and resulted in damages independent of the underlying suit. To suggest that the assignment to Dover Fund could somehow assign that independent claim would mean that somehow the Slotkin decision that establishes and says there is an independent claim separated apart from what was intended to be assigned flips Fox on its head. The Fox decision, that 1914 decision that was recently reaffirmed by the New York Court of Appeals in the Pennsylvania Commonwealth v. I believe it was Morgan Stanley case from 2015. In that case, a husband purchased a plot of land for his wife, assigned it to his wife. The wife subsequently sold that plot of land. The husband subsequently finds out that there was fraud in the sale of the land and brings a fraud claim against the seller. The seller argued the husband assigned any rights to this fraud claim to his wife. Fox says no, that's not how it works. When you are negotiating with someone for something, in this particular case Ms. Phillips was negotiating the resolution of a lawsuit, a product defect lawsuit that contained no fraud allegations, no concealment allegations, no due process violations, just a product defect case. When you sell that, that is what is being sold and assigned. And to the extent that there is fraud in the lead up to the sale or in the lead up to the settlement agreement, that claim is- A Second Circuit case applying that, unlike Slotkin, involves an assignment to a third party? Yes, Your Honor. The Pennsylvania Commonwealth v. Morgan Stanley case, the Second Circuit certified a question to the New York Court of Appeals. And in 2015, June 30th, 2015, just days after Judge Gerber's original opinion in this case, so he didn't have the benefit of the precedent, the New York Court of Appeals, in hearing this argument, said that Commerce Bank, as a subsequent assignee of notes by DAF, an equity vehicle, did not have, as part of the assignment, fraud claims that it attempted to bring against Morgan Stanley. The subject matter was essentially mortgage-backed securities, and there was allegations of fraud concerning their sale. DAF was the original purchaser of those securities and subsequently assigned them to Commerce Bank. Commerce Bank, as a subsequent assignee, attempted to bring a fraud claim against Morgan Stanley. The New York Court of Appeals says no, Commerce Bank does not have a right to pursue fraud claims that DAF did not specifically intend and, as evinced in the assignment, assign to Commerce Bank. That particular case, if you were to analogize it to this one, would say that Dover Fund, as a subsequent assignee of the claim that is the consideration, did not automatically step into the shoes of Ms. Phillips concerning the fraud claim that was independent from what was being assigned, just the reduced claim value of $2.7 million. And again, I want to emphasize that that case was subsequent to Judge Gerber's decision that he reached in June of 2015, but only— Was it brought to his attention? Not to Judge Gerber's attention. The only citation to that case— There was no motion for reconsideration? No, Your Honor. There was not. Was it brought to the attention of the district judge? Judge Furman cites it in a one-line citation, but he essentially copies the citation as it existed in Gibson Dunn's briefing on the issue. Gibson Dunn represents the trust, and I believe Gibson Dunn actually was counsel for respondent in the Pennsylvania v. Morgan Stanley case, the Commerce Bank case. But the one-line citation does not in any way do the factual application justice to our facts. Essentially, the holding says that the fraud claim belongs to the person who was defrauded, period, full stop, absent an explicit expression by that person that they're both aware of the fraud and then intend to purposefully assign the fraud. But the assignment in that case said that the buyer bought the notes at par. Correct, Your Honor, but certainly the assignment in this case says that the reduced— the lawsuit that has now been reduced to $2.7 million within the bankruptcy, that's all that's being assigned. There is no reflection in the assignment of any kind to suggest that Ms. Phillips is aware that she could be defrauded in this manner or be misrepresented to in this manner and then intends to assign that right to Dover Fund. And in applying the Commonwealth decision to our facts, it suggests that we are the only person. But Chief, when you say the problem or the advantage of an assignment is that when you assign all other claims, causes of action, other rights arising under or related to a settlement, that will include claims that you are not currently aware of, correct? But, Your Honor, included a settlement, and that's not the subject matter of the assignment. The only subject of the assignment is the claim. She settled the claim. She—and I see I'm about to run out of time, Your Honor. Go ahead. Thank you. The settlement agreement settled the lawsuit. The consideration for the settlement was a reduction of the claim. And I have two minutes. Thank you. Thank you. Mr. Gillette. Good morning, Your Honors, and may it please the Court. Gabriel Gillette from Gibson, Dunn & Crutcher on behalf of the Wilmington Trust Company, the trustee for and administrator of the Motors Liquidation Company General Unsecured Creditors Trust. Your Honors, this is a straightforward case. As my opponent says, it's a single issue. As the bankruptcy court and the district court both found, under the clear language of the settlement and the assignment, Mrs. Phillips doesn't have a right to seek additional recovery under Rule 60 because she's not a party or its legal representative. She suffered a terrible loss, and we acknowledge that. But that loss doesn't entitle her to get additional recovery years after she voluntarily agreed to settle and assign away all of her claims. And I think as the Court may recognize, the language of the agreements not only controls here, it's incredibly broad and basically disposes of the question. In the settlement, Mrs. Phillips didn't agree to settle something narrow. She agreed to settle, quote, any and all claims whatsoever, whether known or unknown, at the time of the settlement, unquote. That specifically envisions that what she's settling, what she thinks she's settling, may include something she doesn't realize she's settling. Let me just ask you a question on that. What about Mrs. Phillips' claim that GM withheld information during discovery in her Texas state court proceeding? So, as a factual matter, I don't think the allegations that she's made don't prove that out. I mean, what Mrs. Phillips says is that— They're only allegations at this point, right? They are. But, for example, Mrs. Phillips says GM withheld information that her car suffered from a power steering defect. But her car has never been recalled for a power steering defect to this day. She says that GM withheld information about a body control module defect. Her car has not been recalled for that defect either. GM's ignition switch defect, which has a narrow meaning, it's a defined term, in the bankruptcy in this Court's decision on a different matter, doesn't include the recall that ultimately did affect Mrs. Phillips' car. And I think the other thing is that if you look to the assignment, the assignment not only assigns everything and anything from Mrs. Phillips to Dover. That includes, for example, without limitation, an absolute and unconditional assignment of all rights, title, and interests. I'm sort of quoting from the agreement in parts. She assigns, quote, all other claims and causes of action. And there's another part of the assignment that specifically says that Mrs. Phillips acknowledges there may be material information out there that she doesn't know, and she agrees to the assignment anyway. In other words, the assignment explicitly acknowledges that she may not know everything, but she's giving the full right to Dover anyway. Does Dover then have the right to file a claim for fraudulent inducement under this assignment? So whether Dover has a right to— Under Rule 60. Dover would be—unless Dover has since transferred the units, assuming not. Yeah, Dover would be the party or its legal representative. Now, whether it has a substantive right under Rule 60, whether it could prevail, is obviously a separate question. But the issue that the bankruptcy court and the district court addressed was whether Mrs. Phillips was a proper party. I don't think, under the language of the agreements, she's not a proper party. And under the language of the agreements, assuming that there hasn't been a subsequent trade, Dover would be. We haven't heard anything from Dover. Is it also your position that she would separately have to show that she had standing in connection with Rule 60? Is there a difference, in other words, between being a party under Rule 60, regardless of standing, and a party with standing under Rule 60? I don't think I understand the question. So there's a pending matter that I'm somewhat familiar with before this report in connection with Rule 24, the intervener rule. And the question there is whether an intervener under Rule 24 separately has to demonstrate that it has standing. The question that I have to you is, in the context of Rule 60, does the plaintiff here, Ms. Phillips, have to separately show that she's got standing? Or is it enough that she can be a party or otherwise meet the requirements of Rule 60? I think the answer is that it's enough that she is a party separate from the constitutional sense. I think that's based in part on the American psychiatric decision from this court based on Lexmark from the Supreme Court. That Rule 60, despite the language of the courts below, Rule 60 is not standing in the constitutional sense. It's essentially whether she has a cause of action under the rule. So if she's not a party or its legal representative, that means that she has no claim to bring, as it were. It doesn't mean necessarily that she has no power to appear in court. I think the other thing I'd like to address is the idea that the fraud claim was somehow independent of what Mrs. Phillips settled and what Mrs. Phillips assigned. Now, I recognize that in some situations courts have said that a fraudulent inducement claim may be different than another claim, and that's what Slotkin says. But what makes this case different is the language of the agreements, because the settlement encompassed fraudulent inducement, unlike the settlement in Slotkin, and the assignment encompassed fraudulent inducement because it gave all of those rights to Dover. I think the Commonwealth of Pennsylvania case from the New York Court of Appeals, really, it helps us more than it helps Mrs. Phillips. It's true that in that case Commerce Bank didn't get the proper assignment from DAF. But the reason, Judge Kearse, as you pointed out, is because there was no assignment that was even remotely as broad as what we have here. The assignment in that case was essentially an assumption based on affidavits. The people involved in the transaction said, I've transferred you my investment. I've transferred you my notes. I assume, we assumed at the time that that also transferred fraud claims. And under New York law, that's not true. The Court of Appeals has been explicit. This Court has been explicit. Fraud claims don't transfer automatically with a contract. You have to be explicit. Now, Mrs. Phillips says explicit. I think she means, she seems to mean that explicit means you have to say fraud or fraudulent inducement. That's not true. What the Court of Appeals says, what this Court has held, is that what you need is an explicit statement of intent, something where the language is broad enough that it's clear that what you intend is to transfer the fraud claims. I think the unambiguous language of these agreements, when it transfers any and all claims whatsoever, whether known or unknown, when it involves all rights, title, and interests, including all other claims and causes of action, I think that covers fraudulent inducement in a way that in the Commonwealth of Pennsylvania case, it certainly didn't. And as Mrs. Phillips makes the argument in her reply brief, she says, well, this case, what was transferred was a contract right, not a right to the claims arising from the whole transaction. That might have been true in the CalPERS case that the Court of Appeals, New York Court of Appeals, addresses. But that's not true here. What we have, the assignment mentions the 2007 action by name and case number. It mentions the settlement that ended that action. And it mentions the old GM bankruptcy. All of that is how it defines the claim that's being assigned. So I think based on the language of the agreement here, there is no doubt that what Mrs. Phillips gave to Dover was anything and everything, whether she knew about it or not, that had to do with her case. There's no dispute, I think there's no doubt that her Rule 60 motion has to do with something that's related to or arises from what happened in the 2007 action and her settlement. And as a result, not only is the fraudulent inducement claim settled, even if it weren't, it would have been assigned to Dover in the assignment. Thank you, Your Honors. Arthur Steinberg. Good morning, Your Honors. Arthur Steinberg on behalf of New General Motors, which was the entity that bought assets in 2009 from the debtor. That entity was primarily owned by the U.S. Treasury and the Canadian governments. I'd like to touch on four separate points to try to fill in the discussion today. One is with regard to the assignment. If you actually look at the language of the assignment, the language says that they're assigning not the settled claim, which was the $2.7 million, they are assigning to Dover a $250 million claim, which was the original claim that was filed in the case, plus all other claims that the appellant had against the debtor. So it was not limited, it was an assignment of what was originally filed, and you need to understand that the claim was filed in the context of a bar date in a bankruptcy case where you're given a deadline to put forward every claim that you possibly could have in the bankruptcy case, which would subsume any kind of discovery fraud that their discovery of bad conduct that they were alleging in connection with a pre-petition lawsuit. The assignment says we're assigning all the rights to the claim, and the claim subsumed the lawsuit. It said that Dover is recognized as the owner of that $250 million claim. Dover has the power of attorney to act on behalf of the appellant. The appellant acknowledged in the assignment that they have no other claims that they will file in the bankruptcy case or any related proceeding, and that the appellant had a turnover obligation that if they received any money, they had to give it to Dover. Then in connection with the assignment, they file a Bankruptcy Rule 3001E2 statement. The purpose of that statement is so that the books and records of the debtor are confirmed as to who the owner of the claim was. That was filed pursuant to the assignment, which acknowledged that the owner of the claim, the full claim, was Dover. The second thing I wanted to just quickly touch on was the release. The release is not a release of just the allowed claim. The release, if you look at the language in paragraph 4, is a release of the $250 million claim except for what was allowed, plus any other claim that would be considered a claim under Section 105, 101, parenthesis 5 of the Bankruptcy Code. Do you also agree with your colleague that what we're really looking at or reviewing in the context of Rule 60 is not whether Ms. Phillips has standing in the constitutional sense, but whether she's a real party in interest? That's correct, Your Honor. The issue here is they want to, in effect, get more on a claim that they sold to someone else, and there was no compulsion to sell that claim. There are $32 billion worth of claims that ended up getting gut trust units, and then there's an active trading market, and they got cash. They just chose to get cash. They made the willing decision to settle, and they made the willing decision to try to cash out, but there was no requirement to do it, and most people actually did not do that. The release was a release of known and unknown claims, asserted and unasserted claims in law and in equities. It's, in effect, a general release except for what was carved out in the allowed claim. Did you shed any light on this question that I raised earlier about the allegation that Ms. Phillips claimed that GM withheld information during discovery in the Texas state court proceedings? I think, Your Honor, I can't because that involved old GM. I represented new GM. The only thing I would say is that when you settle pursuant to a mediated settlement and you're settling known and unknown claims after you were engaged in active discovery with an expert opinion, you subsumed and you released and you settled those claims as well too. We don't know on this record anything about that Texas state court proceeding, right, or do we? What do we know on this record? On this record, you have the proof of claim which attaches the complaint, and you have naked statements made by the appellant, and you have naked statements made by the gut trust, Mr. Gillette's client. Might it make a difference if there was merit to the claim that GM, old GM, had withheld information during discovery? I don't think so, Your Honor, because I do think that the reason why people settle a case, settle based on known and unknown claims and have finality is for this, and there's a public policy reason that when you have a mediated settlement to promote settlements and have finality in the case, you don't allow revisiting through Rule 60 because someone said there was something else I could have considered that could have led to a different result, and that, I think, is the essence here. And just briefly, because I know I had only a limited amount of time, is that from new GM's perspective, it's clear that they're being swept in, but they weren't part of the prepetition action that led to the accident. They weren't involved in the claim that was filed in the bankruptcy case. They weren't involved in the mediation. They weren't involved in the settlement. Phillips is a non-ignition switch pre-closing accident plaintiff, which under the sale agreement was a retained liability of old GM. The fact that they filed a claim meant that they had chosen and recognized that old GM was the only one responsible, and the Second Circuit decision that took place last year did not involve the Phillips-type case. It involved what was called the ignition switch recalls, which were the February and March recalls in 2014. Phillips, actually, the defect they're complaining about was never recalled, but they certainly weren't in the February and March recall. I appreciate Your Honor's letting me go ahead. Thank you very much. This is not a case of settler's remorse at all. It's a case of pursuing new conduct that Phillips was never aware of, just like the regulator was never aware of, just like other claimants who have now subsequently been allowed to proceed on claims against General Motors are permitted to pursue. Counsel mentioned the decision from last July.  She was a party to that decision because there is a desire to undo the settlement agreement through a 60B motion, that is, let us demonstrate that Mr. Pallage didn't kill his children, that it was, in fact, a product defect. Independent of that desire is a fraud claim that has been clearly stated can proceed if you can demonstrate independent damage. The theory of fraud that you want to proceed under is one of an omitted piece of information, correct? Unknown information. Absolutely. And yet, as your adversary pointed out, part of the language of the release includes known and unknown claims. And I pulled it out. It's page 97 of the appendix, appellant's appendix, and it says presently existing as a modifier. Whether known or unknown, presently existing. The fact that General Motors was engaged in concealment without getting to the merits, and there was some discussion of the merits, and I don't want to borrow a phrase, put the merits cart before the standing horse. We don't have a record to do that. General Motors isn't asserting an affirmative defense based on the settlement release language. It's saying that the assignment divests any standing from Ms. Phillips concerning this independent fraud claim in the lead up to the settlement agreement. You mentioned standing again, and I'll ask you what I ask your adversaries. Why don't we see this as really not about constitutional standing, which is the way that you started your argument at the beginning, but about whether Ms. Phillips is a real party and interest in connection with Rule 60? I mean, it seems to me that you're taking on much more than you have to when you describe it in the framework of constitutional standing. We certainly briefed that issue, and I think that the lower courts casually dismiss Ms. Phillips' argument as not having concrete injury and not being able to demonstrate harm, and then that she should not, based on the precedent, and I think it's Grace is one case, and I can't remember the other site, but that the facts are so distinct as to not apply, and it is certainly something that has been, at least by this court, a rare instance. I think, though, that it's not a particularly difficult hurdle to overcome, especially now with the Commonwealth of Pennsylvania case, the assignment language, and even the settlement language. To the extent that the settlement language would not be held to bar her right to pursue an independent fraud claim, how can an assignment of the consideration that extends from that settlement somehow do that? If she is settling the product defect claim but would have absolute right to pursue a fraud claim in the workup to the settlement agreement, that is the inducement, but then subsequently assigns, without ever knowing about the fraud, that claim, how is she also assigning the independent fraud claim that she otherwise would have a right to bring? And they would have to assert an affirmative defense in the language of the settlement agreement. Thank you very much. Thank you, Your Honors. We'll reserve the decision, and we are adjourned. Court is adjourned.